MARSHALL and others *vs.* GARNER and others.

The owners of a ship involuntarily stranded can not claim a contribution from
the owners of the cargo, for the destruction of the masts and rigging, by the
master, in order to save the ship and cargo, and the lives of the crew, as gen-
eral average; where, although the cargo is saved, the ship is finally lost, to-
tally.

ERROR to the superior court of New-York. The action was
assumpsit brought by the plaintiffs as owners of the ship North
America, against the defendants as owners of the cargo on
board that vessel, for a contribution to a general average. The
superior court rendered judgment for the defendants, and the
plaintiffs brought a writ of error.

*T. Sedgwick,* for the plaintiffs in error. I. The masts, spars
and sails were voluntarily sacrificed for the common benefit.

The sacrifice resulted in the rescue of the cargo from the peril by which it was threatened. The cargo should contribute to replace the value of the property sacrificed; and the loss of the ship, which in fact never took place till two months afterwards, can not affect the principle. II. To make out a case of contribution against the cargo, it is not necessary that the vessel should be ultimately saved. It is only requisite that the vessel should be so far saved from the immediate peril as to produce the safety of the cargo. It is not requisite that *all* the interests at hazard should be benefited. (*Dig. Lib.* 14, *tit.* 2, *c.* 3, *and c.* 5, § 2. *Bradhurst* v. *Columbia Ins. Co.,* 9 *John.* 9. *Scudder* v. *Bradford,* 14 *Pick.* 13. *Sims* v. *Gurney,* 4 *Binn.* 513. *Gray* v. *Waln,* 2 *S. & Rawle,* 229. *Walker* v. *U. S. Ins. Co.,* 11 *Id.* 61. *Caze* v. *Reilly,* 3 *Wash. C. C. R.* 298. *Col. Ins. Co.* v. *Ashby,* 13 *Peters,* 331.) III. If there is conflict of judicial opinion on the question, the decision of the supreme court of the United States should be accepted as controlling, and that tribunal has declared a case like the present to be one for general average. (*Col. Ins. Co.* v. *Ashby,* 12 *Peters,* 331. 3 *Kent's Com. 5th ed.* 239.)

*H. Ketchum,* for the defendants in error. I. The vessel in this case, by force of the winds and waves, was driven on shore. She was driven over the outer bar, and was in four feet of water, when she drew fifteen feet. She was therefore an involuntary wreck when her masts were cut away, and the injury done to the ship thereby, is not a loss for the reparation of which the cargo is bound to contribute. For (1.) If the cutting away of the spars was designed to get the vessel off, there can be no general average contribution, for the object was not accomplished. (2.) If the object in cutting away the masts, was to right the vessel, whereby the lives of persons on board, and cargo, could be preserved, without the design or expectation of saving the ship, then no general average could be required, for the vessel was effectually lost at the time of cutting away. (3.) After shipwreck, the whole of the vessel was lost—spars, rigging and hull—and the cutting away of the spars could not therefore be

regarded as a sacrifice. II. In case of a voluntary stranding, there can be no claim for a general average contribution, when the vessel was not got off; and if there can be no claim for the stranded vessel, there can of course be no claim for the spars which were cut away.

EDWARDS, J. It appears by the bill of exceptions in this case, that on the evening of the 14th of February, 1843, the ship North America, bound to New York, upon her homeward voyage from Liverpool, went ashore on a bar near Shrewsbury inlet. That after she struck, she went over on her broadside, where she lay on her bilge. That at this time her masts were cut away, and she righted, so that her cargo was saved. It further appears that the ship was never got off, but became a total wreck. The captain testifies that if the masts had not been cut away, there would have been a loss not only of the ship and cargo, but of the lives of all on board. Upon this state of facts, the plaintiffs, who were owners of the ship, claim a contribution from the owners of the cargo, for the destruction of the masts and rigging, as general average.

If the ship had been restored from the disaster which caused her loss, by the alledged sacrifice which was made, it is not denied that the plaintiffs would be entitled to recover. The question here presented is, whether such right of recovery can be sustained under the particular circumstances of this case.

The counsel for the plaintiffs, on the argument, based their right to recover mainly upon the principle laid down in *Columbia Insurance Company* v. *Ashby*, 13 *Peters*, 331 ; (*S. P. Caze* v. *Reilly*, 3 *Wash. C. C. R.* 298; *Gray* v. *Waln*, 2 *S. & Rawle*, 229; *Sims* v. *Gurney*, 4 *Binn.* 413.) In that case it was decided that where, in a case of imminent peril, the captain voluntarily ran a ship on shore, and saved the cargo, the owners of the cargo were liable for general average, although the ship was totally lost. In the case of *Bradhurst* v. *Columbia Insurance Co.* (9 *Johns.* 9,) which had been previously decided in the supreme court of this state, a different rule had been laid down.

Marshall *v.* Garner.

With the view which I have taken of this case, I do not consider it necessary to decide between these conflicting authorities. If, however, the rule which has been laid down in this state should be regarded as controlling upon us, the plaintiffs, clearly, could not sustain their claim. For, if the voluntary stranding of a ship, followed by a total loss, would not render the owners of the cargo saved, liable to contribution, *a fortiori* they would not be liable where the sacrifice was of a part of a ship already involuntarily stranded, and, finally, totally lost.

The principle upon which general average rests is, that there has been a sacrifice of the property of one person for the safety of the property of another. Ordinarily the sacrifice is of a portion of the ship or cargo ; but it may be of the whole, as in the cases above cited. But, in the case before us, there was no voluntary sacrifice of the ship, nor of any part of her. At the time her masts were cut away, she was already stranded upon a beach, where the water was but four feet deep, and she drew fifteen feet. And the captain states that, had the masts not been cut away, the ship would have been broken up, and the lives of all on board lost. It was not the case of a ship rescued from one disaster, and afterwards destroyed by another. The disaster was fatal, and there was nothing to be sacrificed. By cutting away the masts and rigging, their destruction from already existing causes was only anticipated. And the fact that one of the consequences of their immediate destruction was to protract the existence of the ship long enough to save the cargo, can not entitle the owners to contribution.

With these views, I am of opinion that the judgment of the court below should be affirmed with costs.

JONES, P. J. concurred.

EDMONDS, J. dissented.

Judgment affirmed.